UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARCO SANCHEZ-DIAZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14CV185CAS(ACL) |
| | ) | |
| IAN WALLACE, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the Petition of Marco Sanchez-Diaz for a Writ of Habeas Corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

**I. Procedural History**

Sanchez-Diaz is incarcerated at the Southeast Correctional Center in Charleston, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of St. Francois County, Missouri. (Respt's Ex. B at 80-82.)

On September 3, 2010, a jury found Sanchez-Diaz guilty of first-degree child molestation and two counts of first-degree statutory sodomy. (Respt's Ex. A at 275.) The court sentenced Sanchez-Diaz to fifteen years' imprisonment on the child molestation count, and thirty years' imprisonment on each of the statutory sodomy counts, all terms to be served consecutively. (Respt's Ex. A at 301.)

In his direct appeal of his convictions, Sanchez-Diaz first argued that the trial court plainly erred in failing to *sua sponte* declare a mistrial when two witnesses testified that the victim, M.L., suffers from post-traumatic stress disorder ("PTSD"). (Respt's Ex. C at 19.) Sanchez-Diaz also

1

argued that the trial court erred in overruling his objection and admitting into evidence testimony that the victim had all the symptoms of PTSD. *Id.* at 20. On January 17, 2012, the Missouri Court of Appeals affirmed Sanchez-Diaz's convictions. (Respt's Ex. E.) The Court held that Sanchez-Diaz's first claim was not preserved and reviewed for plain error only. *Id.* at 5.

Sanchez-Diaz filed a *pro se* motion for post-conviction relief under Rule 29.15. (Respt's Ex. F at 4-14.) After appointment of counsel, an amended post-conviction relief motion and request for evidentiary hearing was filed. *Id.* at 24-56. The amended motion raised the following ineffective assistance of counsel claims: (1) trial counsel failed to object to the state's closing argument based on improper personalization; and (2) trial counsel failed to object and request a mistrial when Patricia Hernandez, M.L.'s mother, testified that Sanchez-Diaz was "rough" with M.L. *Id.* The motion court denied Sanchez-Diaz's amended motion and his request for an evidentiary hearing. *Id.* at 45-47.

In his appeal from the denial of post-conviction relief, Sanchez-Diaz raised the same claims he had alleged in his post-conviction relief motion. (Respt's Ex. G.) The Missouri Court of Appeals affirmed the decision of the motion court. (Respt's Ex. H.)

Sanchez-Diaz filed the instant Petition on January 31, 2014. (Doc. 1.) He raises the following claims: (1) the trial court erred by failing to *sua sponte* declare a mistrial when two witnesses testified that M.L. suffers from PTSD; (2) the trial court erred by admitting into evidence testimony that M.L. had symptoms of PTSD; (3) he received ineffective assistance of trial counsel because trial counsel failed to object and request a mistrial during the state's closing argument; and (4) trial counsel was ineffective for failing to object and request a mistrial when Patricia Hernandez testified that Sanchez-Diaz was "rough" with M.L. *Id.*

On April 22, 2014, Respondent filed a Response to Order to Show Cause. (Doc. 9.) Respondent argues that Ground One is procedurally defaulted, and all of Sanchez-Diaz's claims fail on their merits.

Sanchez-Diaz has filed a Traverse, in which he provides further argument in support of his grounds for relief. (Doc. 15.)

## II. Facts

The sufficiency of the evidence is not in dispute. The victim, M.L., is the daughter of Sanchez-Diaz's ex-wife. In separate incidents, when M.L. was less than twelve years old, Sanchez-Diaz touched M.L.'s vagina with his hand (Count I), made M.L. touch his penis with her hand (Count II), and touched M.L.'s vagina with his penis (Count IV).

## III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

## IV.  Procedural Default

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id.* at 1022.

In cases of procedural default, federal courts are barred from reaching the merits of the

4

defaulted ground absent a showing of both 'cause' and 'actual prejudice' resulting from the alleged constitutional violations. *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). A petitioner must "show that some objective factor external to the defense impeded counsel [or petitioner's] efforts to comply with the State's procedural rule" in order to show "cause" for procedural default. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "Cause" can be demonstrated by either "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or by a showing that interference by officials made compliance impracticable. *Id.* If a petitioner cannot show 'cause' for the procedural default, then the court need not determine whether actual prejudice has resulted. *See Leggins v. Lockhart,* 822 F.2d 764, 768 (8th Cir. 1987).

Respondent argues that Ground One is procedurally defaulted because the state court found that Sanchez-Diaz did not preserve this claim by failing to request a mistrial. Sanchez-Diaz responds that the Missouri Court of Appeals "lifted any procedural bar with regards to this ground by the Court reviewing the ground on the merits…" (Doc. 15 at 2.)

Until recently, there was uncertainty whether a state court's plain error review of a defaulted claim cured or otherwise remedied a procedural default for federal habeas purposes. The Eighth Circuit has now made clear that a state court's plain error review of an unpreserved or waived claim does not serve to excuse a procedural default. *See Clark v. Bertsch*, 780 F.3d 873, 876-77 (8th Cir. 2015) (resolving intra-circuit split).

In this case, the Missouri Court of Appeals concluded that Sanchez-Diaz failed to preserve the claims contained in Ground One. Thus, Sanchez-Diaz defaulted Ground One. Under *Bertsch*, the fact that the Missouri Court of Appeals reviewed Sanzhez-Diaz's arguments for plain error does not cure the default.

Accordingly, the undersigned recommends that Ground One be dismissed.

### V. Sanchez-Diaz's Claims

Sanchez-Diaz raises four grounds for relief. The undersigned will discuss these claims in turn.

**1.     Ground One**

Sanchez-Diaz argues that the trial court erred by failing to *sua sponte* intervene and declare a mistrial when two witnesses—Diana Blackwell and Dr. Carrie Kolmeyer-Dinehart—testified that the victim suffers from PTSD. Sanchez-Diaz claims that this testimony constituted impermissible opinion evidence vouching for M.L.'s credibility, thereby invading the province of the jury.

Ms. Blackwell, a licensed clinical social worker, testified that she saw the victim three times for therapy sessions. (Respt's Ex. A at 185, 189.) Sanchez-Diaz objects to the following testimony:

> [Prosecutor]: Okay. And did you believe, after having seen her for those three times and the other at least whatever momentary contact you may have had with her, did you believe based on those experiences with her that you could come to a conclusion to a reasonable degree of certainty in your field as to whether [M.L.] suffered symptoms consistent with post-traumatic stress disorder? Did you believe you had enough information to do that?
>
> [Ms. Blackwell]: Yes.
>
> [Prosecutor]: So did you come to a conclusion, without telling me what it was, did you come to a conclusion as to whether, based on your experience with her to a reasonable degree of certainty in your field, she suffered symptoms consistent with post-traumatic stress disorder?
>
> [Ms. Blackwell]: Yes.
>
> [Prosecutor]: And what is that opinion?
>
> [Ms. Blackwell]: I do believe that [M.L.] at that time that I saw her was suffering from post-traumatic stress disorder.

> [Prosecutor]: Or at least symptoms consistent with it?
>
> [Ms. Blackwell]: Yes, sir.
>
> [Prosecutor]: Okay. Now,--
>
> [Defense Counsel]: Judge, we need to object at this time. If we could approach.
>
> (The following proceedings were had at the bench out of the hearing of the jury:)
>
> [Defense Counsel]: Judge, we are objecting to any testimony from Mrs. Diana Blackwell reporting [M.L.] suffers from symptoms of post-traumatic stress disorder, as it invades the province of the jury. And it is also a violation of Mr. Diaz's constitutional rights, due process guaranteed by the 5th and 14th Amendments of the United States Constitution and Missouri Constitution, Article One, Section 10.
>
> \*\*\*
>
> THE COURT: Your objection is noted for the record. It's overruled. I won't allow her to state an absolute opinion that the witness had post-traumatic stress disorder, but I would allow her to testify that she observed symptoms that were consistent with that.

*Id.* at 196-97.

Dr. Kolmeyer-Dinehart is a child psychiatrist who saw M.L approximately twenty times for psychiatric treatment. *Id.* at 210, 213. Prior to Dr. Kolmeyer-Dinehart's testimony, defense counsel made the following objection:

> [Defense Counsel]: Judge, at this point I believe [the prosecutor] is going to ask this witness to give an opinion as to whether or not [M.L.] suffered from post-traumatic stress disorder as a result of the sexual abuse allegations.
>   And we're objecting that this testimony would invade the province of the jury, and it would be a violation of Mr. Diaz's constitutional rights…
> \*\*\*
>   With this particular witness, Judge, I would object to her even being able to state if she displays symptoms, because she is a medical doctor.
> \*\*\*
> THE COURT: Well, I agree if he lays the proper foundation, she can only testify as to the symptoms. She cannot draw an ultimate conclusion. Certainly cannot draw an ultimate conclusion that she suffers from post-traumatic stress disorder caused by sexual abuse.
>   The objection is noted for the record. It's overruled. You can have a continuing objection, assuming you follow those strict guidelines.

7

*Id.* at 207-09.

> At issue is the following testimony:
>
> [Prosecutor]: Now, are you aware of the fact that [M.L.] may have seen someone else prior to seeing you?
>
> [Kolmeyer-Dinehart]: Yes.
>
> [Prosecutor]: And are you aware of whatever may have occurred between her and that previous therapist?
>
> [Kolmeyer-Dinehart]: The only thing I know of is that they also diagnosed her with PTSD.
>
> [Prosecutor]: Now, let me ask you a question. Do you—
>
> [Defense Counsel]: Judge, if we could renew our objection at this time.
>
> [Prosecutor]: Again, not in response to the question.
>
> THE COURT: I'm going to sustain and order the last statement of the witness stricken. It was not exactly responsive to the question. The jury is instructed to disregard.
>
> [Prosecutor]: And if I may, Your Honor, I'm going to ask you to confine your remarks to an explanation of symptoms consistent with post-traumatic stress disorder.
>
> [Kolmeyer-Dinehart]: Okay.
>
> ***
>
> [Prosecutor]: Okay. Now, in your opinion to a reasonable degree of certainty in your field, do the symptoms that [M.L.] suffers cause her to have clinically significant distress in important areas of her functioning?
>
> [Kolmeyer-Dinehart]: Yes.
>
> [Prosecutor]: And is that important in your conclusion that she suffers those symptoms?
>
> [Kolmeyer-Dinehart]: Yes. That has to be present to meet the criteria for the diagnosis.

*Id.* at 213-14, 217-18.

Sanchez-Diaz raised this claim in his direct appeal. As previously discussed, the Missouri Court of Appeals found that Sanchez-Diaz did not preserve this claim because he did not request a mistrial. (Respt's Ex. E at 5.) The court found that there were no extraordinary circumstances justifying review of Sanchez-Diaz's claim as a matter of plain error. *Id.* at 7.

Even if Sanchez-Diaz had not defaulted this ground, it would still fail. Whether evidence was admissible under Missouri's evidence rules does not create a federal constitutional issue that is cognizable under the Court's limited habeas jurisdiction. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996).

A clear distinction lies between mistrials granted at the request of the defendant, or with his consent, and those declared by the court *sua sponte*, with respect to whether the double jeopardy clause bars reprosecution. *United States v. Dinitz*, 424 U.S. 600, 606-08 (1976). In the absence of a motion or consent by the defendant, the Supreme Court has dictated that there can be no new trial unless there was a "manifest necessity" for the mistrial or "the ends of public justice would otherwise be defeated." *United States v. Jorn*, 400 U.S. 470, 481 (1971), quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). This doctrine of "manifest necessity" recognizes the significant interest of the defendant in deciding whether, "once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn*, 400 U.S. at 486.

In this case, the trial court did not err in failing to *sua sponte* grant a mistrial. The brief references in the testimony cited above regarding M.L.'s diagnosis of PTSD did not deprive

9

Sanchez-Diaz of due process, as he has failed to demonstrate that a manifest injustice occurred. The decision of the state court was not contrary to, or an unreasonable application of, clearly established federal law.

Accordingly, the undersigned recommends that Ground One be denied.

**2. Ground Two**

In his second ground for relief, Sanchez-Diaz argues that the trial court abused its discretion in admitting into evidence, over his objection, Ms. Blackwell's and Dr. Kolmeyer-Dinehart's testimony that the victim had all the symptoms of PTSD. Sanchez-Diaz argues that the witnesses improperly vouched for M.L.'s credibility.

Sanchez-Diaz raised this claim in his direct appeal. The court held as follows, in relevant part:

> Defendant argues that this testimony was not generalized testimony describing behaviors and other characteristics commonly observed in sex abuse victims that was the subject of State v. Matthews, 37 S.W.3d 847, 850 (Mo. App. 2001), and State v. Silvey, 894 S.W.2d 662, 671 (Mo. banc 1995). Rather, defendant argues this testimony also falls within Taylor, 663 S.W.2d at 236. We disagree.
> We have already described the testimony that Taylor held inadmissible. However, the court in Taylor distinguished that inadmissible testimony from admissible testimony "that the prosecutrix' symptoms were *consistent with a traumatic experience*-even a stressful sexual experience." 663 S.W.2d at 241 (emphasis added). The testimony admitted in this case, which is that M.L. had symptoms consistent with PTSD, falls within the type of testimony Taylor holds admissible.
> The trial court did not abuse its discretion in overruling the objections. Point two is denied.

(Respt's Ex. E at 8.)

An expert is generally not permitted to offer an opinion as to the believability or truthfulness of a victim's story. *United States v. Spotted War Bonnett,* 882 F.2d 1360, 1362 (8th Cir. 1989), *rev'd on other grounds,* 497 U.S. 1021, 110 S.Ct. 3267, 111 L.Ed.2d 777 (1990).

The Eighth Circuit, however, has approved admission of an expert's testimony about general emotional and psychological characteristics of sexually abused children and the children's exhibition of those traits. *United States v. St. Pierre*, 812 F.2d 417, 419-20 (8th Cir. 1987).

The decision of the state court was not contrary to or an unreasonable application of clearly established federal law. The witnesses testified that the victim exhibited symptoms of PTSD. They did not, however, express an opinion as to the truthfulness of the victim or whether sexual abuse by Sanchez-Diaz had occurred. Thus, Sanchez-Diaz's due process rights were not violated by improperly bolstering the credibility of the victim.

Accordingly, the undersigned recommends that Ground Two be denied.

**3.     Ground Three**

In his third ground for relief, Sanchez-Diaz argues that he received ineffective assistance of counsel when trial counsel failed to object based on improper personalization during the state's closing argument.

Sanchez-Diaz challenges the following statement of the prosecutor:

> Now, let's consider for a minute what [M.L.] has been through. When you do so, when you deliberate and consider your verdict, I am going to ask you to think about her not only as you saw her yesterday, but as you saw her in that CAC [Children's Advocacy Center] video.

(Respt's Ex. A at 260.)

Sanchez-Diaz raised this claim in the state post-conviction proceedings. The motion court held that the prosecutor's remarks were not improper and any objection would not be warranted. (Respt's Ex. F at 46.) The Missouri Court of Appeals held as follows:

> The State's closing argument, either when taken in isolation or in its entirety, did not amount to improper personalization because the closing argument did not suggest that Movant represented a personal danger to the jurors or their families, nor did the State ask the jurors to place themselves or some other identifiable person in the shoes of the victim. Rather, the State merely requested

11

the jurors to remember the demeanor of M.L. during the CAC video viewed by the jury during the trial and to draw a permissible inference from that evidence. State v. Delaney, 973 S.W.2d 152, 156 (Mo. App. W.D. 1998) ("a prosecutor has the right to draw any inference from the evidence which he or she believes in good faith to be justified"). Nothing in the State's closing argument indicates the prosecutor asked the jurors to imagine themselves as sexual assault victims or as the victim, herself. See, e.g., Gibbs v. State, 359 S.W.3d 529, 537 (Mo. App. E.D. 2012) (prosecutor's closing argument did not invite jurors to imagine themselves in victim's shoes, but, rather, merely requested the jurors to imagine the terror in the victim's mind as part of relaying facts and arguing the elements of the case). Thus, not only do we find that the State's closing argument was not an improper personalization, but we fail to see how the State referenced evidence outside the record.

      Even if, *arguendo*, the State's closing argument could be interpreted as an improper personalization, "not every brief, isolated statement in argument that may be construed as improper personalization is of such magnitude that it undermines confidence in the outcome of the case so as to establish prejudice." Hall v. State, 16 S.W.3d 582, 585 (Mo. banc 2000). After all, for Movant's claim of ineffective assistance of counsel to succeed, Movant must establish that if an objection had been made to "improper personalization," it would have been sustained. Id.

      In support of his proposition that Movant should be granted an evidentiary hearing so that Trial Counsel can provide explanation for his failure to object, Movant relies upon Butler v. State, 108 S.W.3d 18 (Mo. App. W.D. 2003), State v. McCarter, 883 S.W.2d 75 (Mo. Ap. S.D. 1994), and Peterson v. State, 149 S.W.3d 583 (Mo. App. W.D. 2004). However, these cases offer no support to Movant in the case in bar because Movant has alleged conclusions, not facts. See Rule 29.15(h). Considering the cumulative evidence of Movant's guilt, the motion court found, and we agree, the closing argument was not prejudicial to Movant's case and had no effect on the verdict. See State v. Long, 768 S.W.2d 664, 666 (Mo. App. E.D. 1989) ("A conviction will be reversed for improper argument only if it is established that the argument or the comments had a decisive effect on the jury verdict or that the trial court abused its discretion."). We are unable to conclude, like the motion court, that there is a reasonable probability that, but for counsel's failure to object during closing argument, the outcome of the case would have been different. See Stuckey v. State, 756 S.W.2d 587, 591 (Mo. App. W.D. 1988) ("Standing alone, the failure to object to objectionable evidence or argument does not establish ineffective assistance of counsel…The failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial."). The motion court did not err in finding Movant failed to show prejudice or performance criteria by Trial Counsel's conduct, thereby appropriately denying Movant an evidentiary hearing.

(Respt's Ex. I at 7-8.)

12

In order to state a claim of ineffective assistance of trial counsel, Sanchez-Diaz must meet the *Strickland* standard: he must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Id.* To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable — a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 113 (2009) (internal quotations and citations omitted).

"[I]t is improper to ask jurors to put themselves in the place of the victim." *United States v. Rodriguez*, 581 F.3d 775, 803 (8th Cir. 2009).

The decision of the state courts was not contrary to or an unreasonable application of clearly established federal law. The prosecutor did not ask the jurors to put themselves in the place of M.L. Rather, he asked them to recall her demeanor during the video to establish that her testimony was credible. "The government may…explain why the jury might find the government's witnesses credible." *United States v. Bentley*, 561 F.3d 803, 813 (8th Cir. 2009).

The state court reasonably applied *Strickland* to find that counsel was not ineffective in failing to make a meritless objection. The court's finding that, even, if the remark was improper, Sanchez-Diaz failed to establish prejudice, was also reasonable. Sanchez-Diaz cannot demonstrate that, but for counsel's failure to object, the result of the proceeding would have been different.

13

Accordingly, the undersigned recommends that Johnson's third ground for relief be denied.

**4.      Ground Four**

In his final ground for relief, Sanchez-Diaz argues that trial counsel was ineffective for failing to object and request a mistrial when Patricia Hernandez, M.L.'s mother and Sanchez-Diaz's ex-wife, testified that Sanchez-Diaz was "rough" but not "full force" with M.L. after he was drinking.

> The following exchange occurred during the cross-examination of Ms. Hernandez:
>
> [Trial Counsel]: Okay.   How long did [Sanchez-Diaz] live with you and M.L. and [other child] and your mom on School Street?
>
> [Hernandez]: From 2002 to 2007, off and on.
>
> [Trial Counsel]: During that time did you see [Sanchez-Diaz] physically abuse [M.L.]?
>
> [Hernandez]: Physically abuse her, no.
>
> [Trial Counsel]: Or abuse [other child]?
>
> [Hernandez]: No.   When he was drinking, he was rough with them but not full force, no.

(Respt's Ex. A at 100.)

In his post-conviction motion, Sanchez-Diaz argued that trial counsel was ineffective in failing to object and request a mistrial because Ms. Hernandez's testimony constituted evidence of uncharged crimes and bad acts.   (Respt's Ex. F at 24.)   The motion court rejected Sanchez-Diaz's claim, finding Ms. Hernandez's response, "which it must be pointed out [Defense Counsel] elicited, was not objectionable."   *Id.* at 46.

The Missouri Court of Appeals held as follows, in relevant part:

> As a preliminary matter, Movant does not distinguish to what, if any, uncharged crime or bad act this evidence and argument alludes.   It is not clear

14

what crime Movant violated by being "rough…but not full force" with M.L., nor is there sufficient detail to even conclude Movant did commit a crime or an act requiring the characterization of "bad."

Furthermore, if we were, *arguendo*, to consider Hernandez's testimony as evidence constituting uncharged crimes or bad acts, when considering the cumulative evidence of Movant's guilt we find that Trial Counsel's failure to object to the aforementioned testimony of Hernandez was not prejudicial to Movant's case and had no effect on the verdict. Everage v. State, 229 S.W.3d 99, 102 (Mo. App. W.D. 2007) ("In order to show prejudice flowing from the ineffective assistance of counsel, a rule 29.15 movant bears the burden of establishing a reasonable probability that, but for the alleged errors of counsel, 'the result of the proceeding would have been different.'") (citations omitted). We are unable to conclude that there is a reasonable probability that, but for counsel's failure to object, the outcome of the case would be different. See Stuckey, 756 S.W.2d at 591 ("Standing alone, the failure to object to objectionable evidence or argument does not establish ineffective assistance of counsel…The failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial."). Movant cannot satisfy his burden.

Therefore, we hold that the motion court properly denied Movant's Rule 29.15 motion without an evidentiary hearing on his claim that Trial Counsel was ineffective for failing to object to evidence of prior bad acts because Movant has failed to allege facts warranting relief. See Rule 29.15(h). Hernandez's testimony is, if anything, merely a vague reference to criminal activity or bad acts and is insufficient to connect Movant with uncharged crimes or prior bad acts. See, e.g., Davidson, 308 S.W.3d at 319 (vague reference to criminal activity is not sufficient to exclude evidence); State v. Hays, 360 S.W.3d 304, 312-13 (Mo. App. W.D. 2012) (because the testimony did not specifically reference an uncharged crime or bad act, the testimony did not constitute evidence of uncharged crimes or bad acts).

(Respt's Ex. I at 10-11.)

Sanchez-Diaz provides no basis for a finding that the Missouri Court of Appeals' application of the *Strickland* standard was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts in light of the evidence presented in state court. As the court noted, Ms. Hernandez's general reference to being "rough" did not refer to a crime or a bad act. The court also reasonably found that Sanchez-Diaz is unable to demonstrate that the verdict would differ in the absence of Ms. Hernandez's challenged testimony or that the testimony so unduly prejudiced him that it rendered the trial fundamentally unfair.

15

Accordingly, the admission of Ms. Hernandez's testimony did not violate due process, and trial counsel's failure to object did not constitute the ineffective assistance of counsel.

Accordingly, the undersigned recommends that Ground Four be denied.

V.  **Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Sanchez-Diaz has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no Certificate of Appealability be issued.

**RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the Petition of Marco Sanchez-Diaz for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no Certificate of Appealability be issued.

The parties are advised they have fourteen days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for

good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated:   January 27, 2016